UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

RASHAD R. NAJI,

        Plaintiff,         Civil Action No.: 14-12743
                                Honorable Terrence G. Berg
        v.                      Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 12, 14]**

Plaintiff Rashad Naji appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the ALJ properly evaluated Naji's impairments, gave appropriate weight to his treating physician's opinion and properly relied on VE testimony to render his decision. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 14]** be **GRANTED**;

- Naji's motion **[R. 12]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Claimant's Background and Claimed Disabilities

Naji is a 58-year-old who worked for eighteen years on an automotive assembly line, first doing general assembly and later transporting cars between lines.  He claims disability as a result of back and knee pain, diabetes, high blood pressure, high cholesterol and vision problems.

### B.  Procedural History

Naji filed an application for DIB, alleging disability as of April 1, 2008. [R. 10-5, Tr. 88-89].  The claim was denied initially and Naji filed a timely request for an administrative hearing, held on December 10, 2012, at which both he and a vocational expert ("VE") testified.  [R. 10-2, Tr. 32-49; R. 10-4, Tr. 59-62, 64-65].  In a January 18, 2013 written decision, the ALJ found Naji not disabled.  [R. 10-2, Tr. 19-31].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 4-9].  Naji timely filed for judicial review.  [R. 1; R. 10-2, Tr. 1-3].

### C. The ALJ's Application of the Disability Framework

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequence, the ALJ concluded Naji was not disabled. At step one, he found that Naji had not engaged in substantial gainful activity since his alleged onset date. [R. 10-2, Tr. 24]. At step two, he identified the following severe impairments: diabetes mellitus, hypertension, degenerative changes in the lumbar spine, and osteoarthritis affecting the right knee. [*Id.*]. He found Naji's alleged vision problems to not be a severe impairment. [*Id.*, Tr. 25]. At step three, the ALJ determined that none of Naji's impairments, either alone or in combination, met or medically equaled a listed impairment, specifically considering Listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 4.00 (Cardiovascular System), and 9.08 (Diabetes).[3] [*Id.*, Tr. 25-26].

---

[3] The ALJ considered Listing 9.08 despite the fact that this listing was deleted by the Agency effective June 7, 2011. 76 FR 19692 (Apr. 8, 2011). Endocrine disorders are now listed under generally under Listing 9.00 and

4

Next, the ALJ assessed Naji's residual functional capacity, finding him capable of the full range of light work, except that he needed a cane for walking. [*Id.,* Tr. 26]. At step four, the ALJ determined, with the assistance of VE testimony, that Naji's RFC permitted him to return to his past relevant work as an assembly line driver, and thus he was not disabled. [*Id.,* Tr. 28].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon,* 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if

---

require an ALJ to consider the disorder in the context of its effects on the claimant's ability to meet the criteria of another body system listing. *Id.*; 20 C.F.R. pt. 404, subpt. P, app. 1, § 9.00(C).

5

the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not

harmless.  *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.  An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Naji is not disabled is supported by substantial evidence.

## III. ANALYSIS

Naji alleges the ALJ erred in failing to find severe his vision problems and his obesity, which would have resulted in additional (unspecified) limitations on his ability to work.  He further argues that the ALJ improperly weighed the opinion of his treating physician and made an unsupportable credibility finding.  Finally, he argues that the RFC generated does not translate in an ability to perform his past relevant work.  None of Naji's arguments has merit.

### A. Step Two Analysis

Naji argues that the ALJ erred in finding his vision problems and his obesity non-severe.  The Court finds no reversible error.

At step two, an ALJ must assess the claimant's alleged impairments, and find severe those that impose more than minimal limitations on the

7

ability to perform work functions. 20 C.F.R. § 404.1520(a)(4)(ii). "An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, No. 14-3499, 2015 WL 3702032, at *10 (6th Cir. June 15, 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Therefore, the ALJ committed no more than harmless error, if any error at all, in finding Naji's vision problems or obesity non-severe.

Furthermore, the ALJ did not commit reversible error in failing to include any limitations based on Naji's alleged vision issues. The ALJ discussed ophthalmologist Anil Swami M.D.'s records, which showed Naji's consistent reports of dry and/or watery eyes, Dr. Swami's findings that Naji did not have diabetic retinopathy, and that, despite the presence of cataracts, Naji's vision remained "relatively good" at 20/50 in the right eye and 20/40 in the left as of October 2012. [R. 10-2, Tr. 25; R. 10-7, Tr. 139-41, 144-45, 179-82].[4]

Naji notes that he was also diagnosed with pseudoexfoliation

---

[4] In fact, Dr. Swami noted in an October 2012 letter to Naji's primary care provider that his "best corrected visual acuity" was 20/25 in his right eye and 20/30 in his left, better than what the ALJ noted. [R. 10-7, Tr. 186-87].

8

syndrome and (mild) epithelial basement membrane dystrophy that, he argues, cause transient blurred vision, and that cataracts cloud the eye's natural lens. [R. 12, PgID 278-79, citing R. 10-7, Tr. 139, 186-87]. However, the diagnosis of a condition alone says nothing about its severity, (*Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)), and Naji never reported such symptoms to Dr. Swami or testify to experiencing them. He testified only that he did not drive at night due to "vision problems" and that one of his eyes hurt "sometime[s]." [R. 10-2, Tr. 44-45]. Additionally, Dr. Swami recommended cataract surgery and placement of a punctal plug in Naji's left eye, since a temporary plug resulted in significant improvement. [R. 10-7, Tr. 186]. Thus, the evidence shows that Naji's ocular problems were not severe and were treatable, and the ALJ did not err in declining to impose any work-related limitations on the basis of Naji's claimed vision problems.

    Nor did the ALJ err in failing to impose limitations based on Naji's obesity. Besides the requirement to consider obesity as a potential severe impairment itself, (SSR 02-01p, 2002 SSR LEXIS 1, at *8-12, 2002 WL 34686281, at *3-5 (2002)), the regulations require the ALJ to consider the effects obesity may have on a claimant's other impairments, and thus his or her ability to work. 2002 WL 34686281, at *7. However, a diagnosis of

obesity alone, just as with any other impairment, says nothing about its severity or its impact on a claimant's ability to perform work activities. *Higgs*, 880 F.2d at 863; *Kennedy v. Astrue*, 247 Fed. Appx. 761, 767 (6th Cir. 2007).

Furthermore, Naji did not raise obesity in the proceedings below, and the ALJ did not err by failing to raise the issue *sua sponte*. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011) (finding issue of obesity waived where claimant never raised it as a disabling impairment before the ALJ). Finally, Naji's treating physician, Stuart Stoller D.O.'s medical opinion neither listed obesity as a disabling condition nor classified it as having an effect on his other allegedly disabling conditions. [R. 10-7, Tr. 188]. *Reynolds*, 424 Fed. Appx. at 416 (ALJ did not err in failing to consider obesity where treating physician did not issue limitations based thereon). The Court finds no error.

### C. Treating Physician Rule

Naji argues that the ALJ should have afforded controlling weight to treating Dr. Stoller's medical source statement. Dr. Stoller indicated on the questionnaire that he had treated Naji six to eight times per year since 1996, [R. 10-7, Tr. 188], yet the only records submitted from him were from February 3, 2011 until November 13, 2012. [*Id.*, Tr. 148-50, 192-202]. Dr.

Stoller diagnosed Naji with diabetes, hypertension, high cholesterol and osteoarthritis, noted that he responded well to medication, which included NSAIDs, and issued him a "good, stable," prognosis. [R. 10-7, Tr. 188]. Nevertheless, Dr. Stoller opined, in relevant part, that Naji could sit no more than two hours a day and stand or walk for the same amount. [*Id.*, Tr. 190]. He further opined that Naji needed to be able to shift positions at will, needed an unknown amount of unscheduled breaks for at least twenty minutes at a time, could only rarely lift up to twenty pounds, could rarely stoop, occasionally climb stairs and never crouch, crawl or climb ladders. [*Id.*, Tr. 189-91]. Finally Dr. Stoller opined that Naji would have good and bad days and would be absent from work four or more days a month due to symptoms. [*Id.*, Tr. 191]. The ALJ gave this opinion little weight. [R. 10-2, Tr. 25, 28].

    The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent

of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

The ALJ gave good reasons, supported by substantial evidence, for giving little weight to Dr. Stoller's opinion. The ALJ noted that although Naji claimed disability since 2008 based, in part, on his back and knee pain, his records reflected primarily routine treatment for hypertension and diabetes until 2012. [R. 10-2, Tr. 27; R. 10-7, Tr. 147-50]. The ALJ further noted that no films were taken relative to Naji's back or knee pain until February 2012, and x-rays taken then showed only moderate degenerative changes, at most. [R. 10-2, Tr. 27-28]. The ALJ concluded that these findings were inconsistent with Naji's claims of being able to perform only less than sedentary work. [*Id.*, Tr. 28]. Finally, the ALJ found Dr. Stoller's opinion to be contradicted by the findings of the consulting physician's examination. [*Id.*].

Although many of Dr. Stoller's treatment notes are illegible, those portions that are legible support the ALJ's weighing of his opinion. Naji's first mention of back problems was in November 2011, where he reported a back injury twelve to eighteen years prior. [R. 10-7, Tr. 202]. Upon exam,

12

his gait was normal. [*Id.*]. He was diagnosed with chronic back pain. [*Id.*]. At a February 2012 appointment, Dr. Stoller diagnosed Naji with osteoarthritis of the bilateral knees and the lumbar spine and prescribed a cane, but there is no evidence that he conducted a physical exam of those systems as the check-boxes for a musculoskeletal examination were left blank. [*Id.*, Tr. 201]. He ordered the aforementioned x-rays, which showed mild to moderate chronic narrowing of the medial joint compartment of the right knee with marginal spurring and sclerosis; mild degenerative changes of the patellofemoral joint[5]; and degenerative disc space narrowing throughout the lumbar spine and changes at least mild to moderate in severity. [*Id.*, Tr. 201, 215-17].

That same month, consultant physician Ernesto Bedia, M.D. conducted the only thorough musculoskeletal examination of Naji that is in the record. [R. 10-7, Tr. 164-72]. Dr. Bedia found no tenderness in Naji's back, no swelling or effusion in his knee, and no deficiencies in range of motion of either his lumbar spine or knees. [*Id.*, Tr. 168-69]. Naji was noted to ambulate with a stable gait and did not use an assistive device. [*Id.*, Tr. 166]. He also had no trouble getting up from a chair or getting on or off the exam table, could walk on his toes and heels and could bend

---

[5] The patellofemoral joint is where the knee cap and thigh bone meet.

13

down completely. [*Id.*]. X-rays taken in conjunction with that exam revealed degenerative osteoarthritic changes of the lumbar spine with narrowing and sclerotic changes of the intervertebral disc space at L2-3, L3-4 and L5-21, as well as minimal narrowing of the medial right knee joint compartment. [*Id.*, Tr. 167].

Consistent with the minimal findings documented by Dr. Bedia, exams conducted in March 2012 by Dr. Stoller revealed a normal range of motion, strength and stability in Naji's right knee, [*Id.*, Tr. 197-200], and Naji reported that his knee arthritis was improving slowing with injections of Orthovisc. [*Id.*, Tr. 197]. He reported less knee pain in May 2012 and only mild knee pain in August 2012, with no mention of back pain. [*Id.*, Tr. 195-96]. Dr. Stoller examined Naji on the same day he rendered his opinion, in October 2012, and found Naji's knee pain to be "good," and his range of motion and strength normal, and made no mention of his back pain. [*Id.*, Tr. 194]. Dr. Stoller recommended that Naji increase his exercise and administered another injection. [*Id.*]. In November 2012, Dr. Stoller again found a normal range of motion in Naji's knee, normal stability and gait, and no edema or effusion, although crepitus was present. [*Id.*, Tr. 193]. Naji received another injection. [*Id.*].

A treating physician's opinion is entitled to controlling weight only if it

is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  Here, this type of evidence was lacking in Dr. Stoller's records, which showed that Naji had good relief with the help of injections, and the findings from Dr. Bedia's examination were contrary to Naji's claims of disabling limitations.  This constitutes substantial evidence supporting the ALJ's decision to give little weight to Dr. Stoller's extremely restrictive opinion.

### C. Credibility

Naji argues that the ALJ erred in his credibility assessment. Credibility determinations of witnesses are within the province of the ALJ, and will not be overturned "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Naji takes issue with the ALJ's reliance on his lack of emergent treatment for his knee and back pain as contradicting his claims of disabling pain.  [R. 10-2, Tr. 27].  However, this was just one factor in an array of factors the ALJ considered when assessing Naji's credibility.  The ALJ also noted that Naji had been treated only with non-steroidal anti-inflammatories for pain and not narcotic medicine, and that he had reported

a good response to his medication. [*Id.*]; *Blancha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (The "use of only mild medications [ ] undercuts complaints of disabling pain"). The ALJ further discussed the relatively benign examination findings of both Dr. Stoller and the consultative examiner. [*Id.*, Tr. 27-28].

Naji further argues that ALJ relied on contrived discrepancies in his reports (i.e. comparing Naji's report that he was able to walk for thirty minutes with his testimony that he could walk for twenty and Dr. Stoller's opinion that he could stand only for fifteen minutes and walk less than a block). [R. 12, PgID 283-84]. However, the ALJ did not actually make such a comparison, but simply recited these various reports in his decision. [R. 10-2, Tr. 24-25, 27-28]. Additionally, he used Naji's reports of walking thirty minutes a day in the summer and riding a stationary bike for exercise as evidence that his symptoms were not as limiting as alleged. [R. 10-2, Tr. 27-28]. The ALJ was entitled to consider Naji's daily activities in assessing the credibility of his claims. *Blancha*, 927 F.2d at 231.

### D. Ability to Perform Past Work with RFC Limitations

Naji argues that the ALJ erred in relying on VE testimony that found Naji could perform his past relevant work as an automotive assembly driver at the light level despite his need of a cane for ambulation. Naji points to

16

SSR 96-9p, which discusses the need for a cane in relation to an ability to perform the full range of sedentary work. 1996 SSR LEXIS 6, at *19-20, 1996 WL 374185, at *7 (1996). Naji extrapolates from this that the need for a cane necessarily limits a person to no more than sedentary work, and thus the ALJ's finding that Naji could perform light work is error. The Court does not follow Naji's logic.

SSR 96-9p is limited to the question of adjustment to other work, a step five inquiry. *Id.*, at *1. Naji's ability to adjust to other work given his RFC is irrelevant here as the ALJ ended his analysis at step four, where the relevant inquiry is a claimant's ability to perform past relevant work in light of the RFC. 20 C.F.R. §404.1560. The VE testified that Naji could perform his past relevant work despite his need for a cane. [R. 10-2, Tr. 46]. The Court finds no error in the ALJ's reliance on the VE's testimony, which he confirmed was consistent with the Dictionary of Occupational Titles ("DOT"). [*Id.*, Tr. 47]. *See also* SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704 (Dec. 4, 2000). Naji has not raised any clear conflict between the VE's testimony and the DOT either during the hearing or before this Court. Therefore, the Commissioner's decision should be affirmed.

17

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMEND**S that Naji's Motion for Summary Judgment **[R. 12]** be **DENIED**, the Commissioner's Motion **[R. 14]** be **GRANTED** and this case be **AFFIRMED**.

>s/Elizabeth A. Stafford
>ELIZABETH A. STAFFORD
>United States Magistrate Judge

Dated: July 28, 2015

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 28, 2015.

                                    s/Marlena Williams
                                    MARLENA WILLIAMS
                                    Case Manager